**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James M. Mitchell, | No. CV-09-1362-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | [Not For Publication] |
| EMC Mortgage Corporation; Mortgage Electronic Registration Systems, Inc.; Bank of America National Association; 402 Now LLC; John Does 1-5, | |
| Defendants. | |

Before the Court is a Motion to Dismiss by Defendants EMC Mortgage Corporation ("EMC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Bank of America, National Association ("B of A") (collectively, the "Moving Defendants"). (Doc. #20.) In addition to responding to the Motion to Dismiss, Plaintiff James M. Mitchell lodged a proposed First Amended Complaint. (Doc. ## 51, 52.)

**I.  Legal Standard**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

First, the court must identify allegations in the complaint that are not entitled to the assumption of truth. *Id.* at 1949, 1951. The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* at 1949, 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Second, the court must determine whether the factual allegations plausibly suggest an entitlement to relief. *Iqbal*, 129 S. Ct. at 1950, 1951. This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

**II.     Facts Assumed to Be True**[1]

Plaintiff James M. Mitchell is the owner in fee of property in Goodyear, Arizona, where he maintained his primary residence at all times relevant to this action ("the Property"). On December 20, 2006, Mitchell refinanced the Property by executing a Promissory Note and Deed of Trust, which identify the Lender as First Bank d/b/a First

---

[1]To decide dismissal and futility of amendment, the Court assumes as true and construes in the light most favorable to Mitchell the factual allegations he made in his proposed First Amended Complaint in addition to those in his Original Complaint.

- 2 -

Bank Mortgage. The Deed of Trust identifies the Borrower as Mitchell, "a married man as his sole and separate property." It identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" and the beneficiary under the Deed of Trust. Under the Promissory Note, Mitchell owed First Bank $643,500.00 plus interest.

Paragraph 20 of the Deed of Trust provides for the sale of the Promissory Note or a partial interest in the Promissory Note, together with the Deed of Trust:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Mitchell also executed the following riders to the Deed of Trust: Planned Unit Development Rider, Occupancy Rider, Prepayment Rider to Security Instrument, Adjustable Rate Rider, Addendum to Adjustable Rate Rider, and Balloon Note Rider to Adjustable Rate Rider. The Prepayment Rider to Security Instrument established the terms of a prepayment charge if Mitchell prepaid more than twenty percent of the original principal amount of the loan within twenty-four months from the date of execution of the Deed of Trust. The Adjustable Rate Rider and the Addendum to Adjustable Rate Rider set the initial yearly interest rate at 8.500% and state: the rate may change on January 1, 2009, and every six months thereafter; the rate at the first change date will not be greater than 10.500%; the rate will never increase or decrease by more than 1.0% at any subsequent change date; the rate will never be less than 8.500% or more than 15.500%;

1 and the rate will be set at 7.500% above the current index rate (rounded to the nearest
2 0.125%). Monthly payments for the first twenty-four months were set at $4,717.46.
3 The Truth-in-Lending Disclosure Statement provided to Mitchell at closing
4 discloses that over the thirty-year term of the loan Mitchell would pay a total finance
5 charge of $2,252,905.00 for the $633,341.86 financed, resulting in an annual percentage
6 rate of 11.912%. In addition, at the end of the thirty-year term, Mitchell would be
7 required to make a balloon payment of $471,771.97. The Truth-in-Lending Disclosure
8 Statement indicates that the monthly payment would be $4,717.46 for the first twenty-
9 four months and then would increase at six-month intervals to $5,701.62, $6,205.65,
10 $6,715.01, and finally $6,907.01 for the remaining 317 months. It discloses that the loan
11 has a variable rate feature and the current index rate was 5.370%. It refers to the HUD1
12 Settlement Statement for filing/recording fees. It also indicates there was a prepayment
13 penalty and Mitchell would not be entitled to a refund of part of the finance charge if he
14 paid off the loan early. These terms were not explained to Mitchell.
15 Mitchell "was not provided with two (2) copies of a Notice of Right to Cancel in
16 proper form," but he did receive at least one copy of the Notice of Right to Cancel at
17 closing, which he attached to his proposed First Amended Complaint. Mitchell does not
18 allege the Notice of Right of Cancel has any specific deficiencies.
19 To obtain the loan from First Bank, Mitchell was interviewed by telephone to
20 complete the Uniform Residential Loan Application. He did not sign the application and
21 was not provided a copy to review before it was submitted for approval. He was not
22 required to provide any income verification to demonstrate his ability to repay the loan.
23 The only information used to qualify Mitchell for the loan was his stated income and his
24 credit score.
25 In early 2008, Mitchell began experiencing financial difficulty and missed some
26 house payments. He has a sales job, and sales were significantly down. In addition, his
27
28

1 wife was treated for cancer, and the medical bills were significant. He discussed with
2 EMC modification or forbearance workout solutions for his loan.[2]

3 On November 20, 2008, a Substitution of Trustee was recorded in Maricopa
4 County, Arizona, on the Deed of Trust for the Property. It represents that the present
5 Beneficiary under the Deed of Trust is "Bank of America, National Association as
6 successor by merger to LaSalle Bank National Association, as Trustee for
7 Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed
8 Certificates, Series 2007-HE3." Through the Substitution of Trustee, B of A substituted
9 Quality Loan Service ("QLS") as Trustee under the Deed of Trust. Also on November
10 20, 2008, a Notice of Trustee's Sale was recorded, which named the same current
11 Beneficiary. It gives notice that the Property would be sold on February 19, 2009.

12 During this time, Mitchell reached a "repayment agreement" with loss mitigation
13 at EMC and made several payments under this agreement. On November 26, 2008,
14 Mitchell signed the agreement. On December 23, 2008, Mitchell wired a payment for
15 $4,000.00 to EMC. EMC postponed the date of the trustee's sale.

16 On December 23, 2008, an Assignment of Deed of Trust transferring all beneficial
17 interest under the Deed of Trust from MERS to B of A was recorded. It was dated
18 November 15, 2008, and notarized on December 16, 2008.

19 On March 25, 2009,[3] through Florida counsel, Mitchell sent to EMC, by certified
20 United States Postal service mail, a qualified written request under RESPA that sought
21 items such as "validity and proof of debt and the name of the original creditor," "name
22 and address of Note holder," and "signed and executed copy of the mortgage and note."

---

[2]Neither the Original Complaint nor the proposed First Amended Complaint alleges when EMC began servicing the loan. Mitchell alleges only that EMC "was involved in the loan from the beginning, but concealed this information from Mitchell" and "was involved from the beginning, but had no financial stake in the transaction."

[3]Mitchell's proposed First Amended Complaint alleges the qualified written request was mailed on March 21, 2009, but the attached return receipt is stamped as mailed March 25, 2009.

Among other things, it requested that EMC "[p]lease investigate all the facts stated herein and provide the borrower with options to have this loan restructured to a fully amortizing fixed rate *affordable* loan, based on income documents provided by the borrower and stated herein." On March 30, 2009, EMC received Mitchell's qualified written request. On April 24, 2009, QLS conducted a trustee's sale of the Property on behalf of beneficiary B of A and sold the Property to 402 Now, LLC. On April 26, 2009, Mitchell's counsel received a partial response to the qualified written request.

On June 25, 2009, Mitchell initiated this lawsuit against EMC, MERS, B of A, and 402 Now, LLC. (Doc. # 1.) Mitchell's Original Complaint alleges ten counts, four of which are based on federal law. (*Id.*) On July 27, 2009, EMC, MERS, and B of A moved to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6). (Doc. #20.) On August 26, 2009, Mitchell filed his Response in Opposition to Motion to Dismiss with an attached proposed First Amended Complaint. (Doc. ## 51, 52.) Mitchell's proposed First Amended Complaint alleges nine counts, three of which are based on federal law. None of the federal claims in the Original Complaint or the proposed First Amended Complaint are pled against 402 Now, LLC.

### III. Dismissal of Mitchell's Federal Claims

A complaint should consist of "clear and concise averments stating which defendants are liable to plaintiffs for which wrongs, based on the evidence." *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). Count Four of the Original Complaint is titled as against EMC and B of A, but alleges that "Defendant" (singular) has violated FDCPA, "Defendant's violation . . . has caused Plaintiff to suffer damages," and "Defendant's violation . . . was reckless, willful and wanton." It is unclear to which Defendant Mitchell refers.

Although Counts Five, Six, and Seven of the Original Complaint reference other Defendants in their titles, none include allegations of actions by any Defendant other than EMC. Therefore, each of them purports to state a claim against only EMC.

### A. Count Four (Against EMC and B of A): Violation of the Fair Debt Collection Act ("FDCA"), 15 U.S.C. § 1692, *et seq.*

The purpose of the FDCA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). It defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). "Creditor" means "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

Under the FDCA, a "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* "[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985).

The FDCA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. It specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the

principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). It also prohibits "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

On a motion to dismiss under Rule 12(b)(6), the Court is not required to accept as true Mitchell's legal conclusions or conclusory factual allegations, including that EMC and B of A are "debt collectors" under FDCPA. Under the FDCA, a "debt collector" does not include a mortgage servicing company, such as EMC, or a creditor, such as B of A. Further, neither EMC nor B of A is in business primarily for the purpose of collecting the debts of another.

Mitchell contends that B of A was a debt collector because it became the beneficiary on the Promissory Note "after the Note was alleged to be in default and posted for trustee's sale." However, the Assignment of Deed of Trust was dated November 15, 2008, before the Notice of Trustee's Sale was recorded on November 20, 2008, even though the Assignment was not recorded until December 23, 2008. Moreover, Mitchell alleges that he had reached a repayment agreement with EMC and wired a payment to EMC on December 23, 2008, the same day the Assignment was recorded. Thus, B of A became a creditor during a period in which Mitchell alleges the Promissory Note was in a forbearance period.

Regardless of whether Mitchell intended to plead an FDCPA claim against EMC, B of A, or both, he fails to state a claim under FDCPA because neither EMC nor B of A is a debt collector. Therefore, Count Four of Plaintiff James M. Mitchell's Original Complaint will be dismissed.

      **B.**      **Count Five (Against EMC): Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and Regulation Z, 12 C.F.R. § 201, *et seq.***

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to

- 8 -

him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Any action under TILA must be brought within one year from the date of the occurrence of the alleged violation. 15 U.S.C. § 1640(e). The limitations period in § 1640(e) runs from the date of consummation of the transaction, but "the doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or ha[s] reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

Under TILA, "creditor" refers only to:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is not such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). A "creditor" includes any person who originates two or more mortgages in any twelve-month period or any person who originates one or more mortgages through a mortgage broker where the mortgage is "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan," if the consumer's transactional costs exceed specified minimums. 15 U.S.C. § 1602(f), (aa).

For each consumer credit transaction, TILA requires a creditor to disclose the identity of the creditor required to make disclosure, the amount financed, a statement of the consumer's right to obtain a written itemization of the amount financed, the finance charge, the total of payments, the payment schedule, and other information. 15 U.S.C. § 1638(a). In any residential mortgage transaction, the creditor must provide "a statement indicating whether a subsequent purchaser or assignee of the consumer may assume the debt obligation on its original terms and conditions." 15 U.S.C. § 1638(a)(13). For a variable interest residential mortgage transaction, the creditor must provide at application

1  either a statement that the periodic payments may increase or decrease substantially and
2  the maximum interest rate and payment for a $10,000 loan originated at a recent interest
3  rate, assuming the maximum periodic increases in rates and payments under the program,
4  or a historical example illustrating the effects of interest rate changes implemented
5  according to the loan program.  15 U.S.C. § 1638(a)(14).

In any consumer credit transaction in which a security interest is or will be retained or acquired in property used as the principal dwelling of the person to whom credit is extended, the obligor has the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of information and forms the creditor is required to provide to the obligor.  15 U.S.C. § 1635(a).  The creditor must deliver two copies of the notice of right to rescind to each consumer entitled to rescind.  12 C.F.R. § 226.23(b)(1).  An obligor's right of rescission expires three years after the date of the consummation of the transaction or upon sale of the property, whichever occurs first.  15 U.S.C. § 1635(f).  After initiation of foreclosure, however, the consumer has the right to rescind the transaction if the creditor did not provide the properly completed model form in Appendix H of 12 C.F.R. § 226 or a substantially similar notice of rescission.  12 C.F.R. § 226.23(h)(1)(i).  When a consumer rescinds a transaction, the creditor must return any money or property that has been given to anyone in connection with the transaction and take any action necessary to reflect termination of the security interest; then the consumer must tender to the creditor the money, property, or the property's reasonable value.  12 C.F.R. § 226.23(d).

First, the limitations period for a TILA action expired on December 20, 2007. Mitchell did not bring this action until June 25, 2009.  Mitchell has not alleged any facts that would entitle him to equitable tolling.  He conclusorily alleges only:

> Defendant EMC, through its agents and affiliates, fraudulently misrepresented and concealed the true facts related to the items subject to disclosure to James M. Mitchell, and Plaintiff James M. Mitchell did not discover the Defendant's failure to make such disclosures pursuant to 15 U.S.C. [§] 1638 until one (1) year within the filing of this Complaint.

Mitchell's alleged receipt of one copy, instead of two copies, of the Notice of Right to Cancel is not a sufficient basis for equitable tolling of the running of the limitations period.

Second, EMC is not a creditor under TILA. On the face of the Deed of Trust and Promissory Note, Mitchell promised to pay First Bank d/b/a First Bank Mortgage. Therefore, EMC is not "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." EMC is not an assignee of the original creditor. Further, Mitchell alleged EMC had no financial stake in the transaction.

Third, even if EMC were a creditor under TILA, Mitchell has alleged no conduct by EMC that may have violated TILA except for Mitchell's alleged receipt of one copy, instead of two copies, of the Notice of Right to Cancel. Mitchell conclusorily alleges, "Defendant EMC violated 15 U.S.C. § 1638 by improperly and/or inadequately disclosing one or more of the following items to Plaintiff" followed by a list of items, without alleging that any specific item was not disclosed. Not only should this "threadbare recital of the elements of a cause of action" be disregarded, it is completely contradicted by the Truth-in-Lending Disclosure Statement Mitchell received.

Also, Mitchell alleges that EMC was required by 15 U.S.C. § 1638(b)(1) and 12 C.F.R. § 226.17 to make "certain specified disclosures" to Mitchell before consummation of the transaction, such as "EMC's stake in the transaction," "it was not a suitable loan for Plaintiff," "the true nature of the 'sale' was actually a purchase of Plaintiff's signature to create a security," and "the appraisal was fraudulently puffed by the bubble created by the mass securitization scene in which defendant EMC and its parent Bear Stearns were major players." However, 15 U.S.C. § 1638(b)(1) and 12 C.F.R. § 226.17 do not require such disclosures.

Therefore, Count Five of Plaintiff James M. Mitchell's Original Complaint will be dismissed.

### C. Count Six (Against EMC): Violation of Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*

RESPA requires that a uniform settlement statement be completed and made available for inspection by borrowers at or before settlement by the person conducting the settlement. 12 U.S.C. § 2603. The statement must "conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." *Id.* Section 2603 does not explicitly or implicitly provide a private right of action. *See Morrison v. Brookstone Mortg. Co.*, 415 F. Supp. 2d 801, 804-06 (S.D. Ohio 2005).

Lenders that make federally related mortgage loans must provide borrowers with a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with settlement. 12 U.S.C. § 2604(c). However, RESPA does not explicitly or implicitly provide a private right of action for a violation of § 2604(c) or any regulations relating to it. *Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997) (per curiam).

Section 2607 of RESPA prohibits giving or accepting referral fees related to a real estate settlement service and splitting charges made or received for the rendering of a real estate settlement service other than for services actually performed. Section 2608 of RESPA prohibits sellers from requiring that buyers purchase title insurance covering the property from any particular title company. Any action brought under § 2607 or § 2608 must be brought within one year of a violation. 12 U.S.C. § 2614. Mitchell alleges he is entitled to damages under §§ 2607 and 2608, but did not allege violations of either section. Even if he had, the limitations period has expired.

Section 2605 of RESPA requires lenders to disclose to each person who applies for a federally related mortgage loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding. 12 U.S.C. § 2605(a). Each servicer must notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any

1   other person. 12 U.S.C. § 2605(b)(1). If a servicer receives a qualified written request

2   from the borrower for information relating to services of a loan, the servicer shall provide

3   a written response acknowledging receipt of the correspondence within twenty days.

4   12 U.S.C. § 2605(e)(1). Within sixty days of receipt of the qualified written request,

5   excluding legal public holidays, Saturdays, and Sundays, the servicer must provide the

6   borrower with a written explanation or clarification that includes "information requested

7   by the borrower or an explanation of why the information requested is unavailable or

8   cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2). Any action brought under

9   § 2605 must be brought within three years of a violation. 12 U.S.C. § 2614.

10       In response to the motion for summary judgment, Mitchell has not identified any

11   allegations in his pleadings that support a claim under § 2605, much less factual

12   allegations that plausibly suggest entitlement to relief. *See Iqbal*, 129 S. Ct. at 1950,

13   1951. He contends that "EMC failed to timely or adequately respond to his Qualified

14   Written Request," but EMC received the response on March 30, 2009, and responded on

15   April 26, 2009, which is less than the sixty business days required by § 2605(e)(2).

16   Mitchell has not pled, or argued, how the content of EMC's response failed to comply

17   with statutory requirements.

18       Further, the Deed of Trust gives notice the loan servicer could be changed, and if it

19   were changed, Mitchell would be given written notice of the change and related

20   information. Mitchell has not alleged when he applied for the loan and that he did not

21   receive notice that the loan service could be changed at the time of his application.

22   Moreover, he has not alleged the loan servicer did change. In fact, he alleges that EMC

23   "was involved from the beginning." He has not alleged the identity of the original

24   servicer. He alleges that after he "missed some house payments," he discussed with EMC

25   modification or forbearance workout solutions for his loan. Therefore, he must have

26   known that EMC was servicing his loan.

27       Therefore, Count Six of Plaintiff James M. Mitchell's Original Complaint will be

28   dismissed.

### D. Count Seven (Against EMC): Violation of Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1610, 1639

Mitchell has abandoned his HOEPA claim by not responding to the Moving Defendants' arguments regarding Count Seven and by omitting it from his proposed First Amended Complaint. Further, the one-year limitations period for a claim under HOEPA has expired. *See* 15 U.S.C. § 1640(e). Therefore, Count Seven of Plaintiff James M. Mitchell's Original Complaint will be dismissed.

## IV. Dismissal of Federal Claims Without Leave to Amend

For reasons stated above, Counts Four, Five, Six, and Seven of Plaintiff James M. Mitchell's Original Complaint, the only counts alleging federal claims, will be dismissed with prejudice for failure to state a claim. The Court further finds Counts Five, Six, and Seven of Plaintiff James M. Mitchell's proposed First Amended Complaint, the only counts alleging federal claims, also fail to state a claim and therefore the proposed amendment would be futile as to those claims.

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether justice requires granting leave to amend, the Court has considered Mitchell's proposed First Amended Complaint and found the proposed amendment to be futile and that further amendment would cause undue prejudice to the opposing party. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The district court's discretion to deny leave to amend a complaint is "especially broad" where the plaintiff already has had one or more opportunities to amend his complaint. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore*, 885 F.2d at 538. Therefore, leave to amend will not be granted.

In his Original Complaint, Mitchell pled jurisdiction under 28 U.S.C. § 1331 as an action arising under federal law and supplemental jurisdiction under 28 U.S.C. § 1367 for his state law claims. By dismissing all claims in Counts Four, Five, Six, and Seven, the Court has dismissed every federal claim over which it has original jurisdiction under

28 U.S.C. § 1331.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Mitchell's remaining state law claims, as the federal claims are insubstantial and they have been dismissed early in the case.

IT IS THEREFORE ORDERED that the Motion to Dismiss by EMC, MERS, and B of A (doc. #20) is granted in part.  Counts Four, Five, Six, and Seven of Plaintiff James M. Mitchell's Original Complaint are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  The remainder of the Motion to Dismiss is denied as moot in light of the dismissal of the remaining state law claims.

IT IS FURTHER ORDERED that the remainder of Plaintiff's Complaint (doc. # 1) is dismissed as to all Defendants without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants EMC Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., and Bank of America, N. A., dismissing Counts Four, Five, Six, and Seven of Plaintiff's Complaint (doc. # 1) with prejudice, and dismissing all other claims as to all Defendants without prejudice.

DATED this 13th day of October, 2009.

_____
Neil V. Wake
United States District Judge